IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AGI SURETRACK LLC,<br><br>           Plaintiff,<br><br>vs.<br><br>FARMERS EDGE INC., and FARMERS EDGE (US) INC.,<br><br>           Defendants. | 8:22CV275<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Filing No. 271. The Plaintiff, AGI Suretrack LLC, (AGI) brings this patent infringement action against Defendants, Farmers Edge, Inc., and Farmers Edge (US) Inc. (Farmers Edge). Filing No. 151, Amended Complaint. The Asserted Patents are U.S. Patent Nos. 11,126,937 ("the '937 Patent"), 10,963,825 ("the '825 Patent"), 11,164,116 (the '116 Patent"), 11,361,261 ("the '261 Patent"), and 11,507,899 ("the '899 Patent") (collectively, "Asserted Patents"). Filing No. 273 at 3.

Farmers Edge moves for summary judgment on several grounds, including that 1) the Asserted Patents are invalid under 35 U.S.C. § 101; 2) the Asserted Patents are unenforceable under the doctrine of prosecution laches; and 3) AGI's infringement claims are barred under equitable estoppel. Filing No. 272 at 6. AGI also filed a motion for summary judgment. Filing No. 277.

Both AGI and Farmers Edge have various pending motions including motions to strike or exclude certain opinions of their opposing experts (Filing No. 262, Filing No. 266), motion for construction of disputed claims (Filing No. 343), assertion that their case be declared exceptional under 35 U.S.C. § 285 (Filing No. 156), motion to bifurcate (Filing

1

No. 299), motion for an order to show cause (Filing No. 362), and a motion for leave to file an amended counterclaim (Filing No. 367).

The Court, having duly considered the pleadings and papers in support of and in opposition to Farmers Edge's motion for summary judgment (Filing No. 271), grants the motion on the ground of invalidity under Section 101. In light of the Court's ruling on summary judgment, AGI's motion for summary judgment (Filing No. 277) is denied. Neither case has been established as exceptional under Section 285, and, therefore, all other remaining motions are denied as moot. Filing No. 262, Filing No. 266, Filing No. 298, Filing No. 301, Filing No. 303, Filing No. 317, Filing No. 337.

## BACKGROUND

The Asserted Patents are each named "Farming Data Collection and Exchange System." Filing No. 273 at 3. AGI described the Asserted Patents as "generally related to automated systems and methods for: (1) capturing, processing and sharing point-by-point farming data; (2) collecting farming operation data using passive data collection devices attached to farming equipment while the farming equipment operates; and (3) processing and sharing the farming operation data via an online farming data exchange system or server." Filing No. 151.

The Asserted Patents have nearly identical specifications; therefore, references in this factual background are to the '937 Patent, but they apply to all Asserted Patents. Filing No. 273 at 7. Each Asserted Patent's specification states:

> The present invention relates generally to automated systems and methods for capturing, processing and sharing farming data, and more particularly to systems and methods for capturing farming operation data in real time using passive data collection devices attached to farming equipment while the farming equipment is used to perform the farming operations, and then

2

processing and sharing the farming operation data via an online farming data exchange system or server.

*Id.* Each Asserted Patent's specification notes, "'Contemporary farming machines, such as tractors and planters, include computer systems and controllers capable of permitting farmers and farming business to exercise extremely precise control over almost every aspect of a farming operation, such as fertilizing, planting, spraying or harvesting crops in a field." *Id.*

> The specification of each Asserted Patent states:
>
> During the course of performing farming operations, the computer systems and technology onboard the farming vehicles and farming implements typically transmit, receive and respond to electronic messages containing an enormous amount of very detailed operational data that describes almost every aspect of the farming operation. For example, if the farming vehicle and the farming implement used during a farming operation are a tractor and a sprayer, respectively, then the tractor and the sprayer will use the onboard computer systems and computer network to exchange and respond to a large number of messages that include critical operating parameters for the sprayer, such as, among other things, the sprayer's on/off status, working width, x-offset (i.e., driving direction), y-offset, target rate, application rate, master valve on/off status, total volume of spray applied, total area sprayed, total distance driven and total time used. It would be extremely useful to capture, store, analyze and share these operating parameters.
> …
>
> [T]he conventional precision farming techniques, computer systems and related technology has heretofore failed to provide farming businesses and other interested parties with an easy-to-use, unobtrusive, secure and reliable way to capture, store, share and profit from what is fast becoming a massive amount of very detailed, and enormously valuable, farming operation data generated by these automated farming techniques, machines and computer systems.
> …
>
> Being able to precisely identify and describe the particular field where a farming operation takes place, and determining which parts of that field were treated and which parts were left untreated for one reason or another is an extremely important function for farming businesses, farming insurance companies, seed manufactures and government entities. The

3

Farms Services Agency (FSA) of the USDA is currently in the process of developing and implementing a common land unit (CLU) data layer (or database) to provide farm agency programs with a mapping of all of the farm fields in the United States, or at least all of those farm fields involved, or likely to be involved, in FSA programs.

…

There are a number of problems and disadvantages associated with CLUs as currently implemented by the FSA. Chief among these problems is the fact that CLUs are mainly created by the tedious process of manual inspections conducted on the land, or viewing satellite-generated images of the land and drawing boundaries on maps that match landmarks and demarcations (such as fence lines, roads and/or waterways) as observed by the humans viewing the satellite images. Both of these methods for creating CLUs are labor-intensive and error-prone, and typically result in extremely inaccurate and unreliable CLU boundaries. Another problem associated with the CLU data layer is that the process of manually drawing boundaries around landmarks to create the CLUs does not account for sections of farming land that, for one reason or another, are not currently being used for farming operations.

The specification of each Asserted Patent states that they 'address the above-described problems by providing a relay device, a farming data exchange system and computer-implemented methods for tracking, collecting, storing and sharing farming operation data for farming businesses.'

Filing No. 273 at 7–9.

Claim 1 of the '937 Patent recites:

A Relay device for tracking farming operations for a farming business, comprising:

(a) A microprocessor;
(b) A bus connector for connecting the relay device to a message bus on a farming vehicle or farming implement, wherein the message bus is configured to carry messages generated by the farming vehicle or the farming implement while the farming vehicle and the farming implement are used to perform the farming operation;
(c) A global positioning system receiver that receives position and time signals from space-based satellites while the farming operation is performed;
(d) A memory storage area that stores (i) an electronic farm record for the farming business, (ii) descriptive information about a farming operation land segment associated with the farming business, and (iii) a plurality

        of implement profiles each defining, for a known farming implement, a known manufacturer code, a known device class, a known version and known communication protocol; and
(e) An application program comprising programming instructions that, when executed by the microprocessor, will cause the microprocessor to automatically

    (i)    Extract content from one or more messages transmitted on the message bus and use the extracted content to determine that there is a match between the farming implement used to perform the farming operation and the known farming implement corresponding to one of the plurality of implement profiles;
    (ii)   Use the extracted content, the position and time signals and the known communication protocol defined by said one of the plurality of implement profiles to determine a set of operating events and a travel path for the farming operation,
    (iii)  Use the set of operating events, the travel path and the descriptive information stored in the memory storage area to determine that the farming operation occurred on the farming operation land segment, and
    (iv)  Record the farming operation and the descriptive information for the farming operation land segment in the electronic farm record.

*Id.* at 9–10.

      Farmers Edge identified Claim 1 of the '937 Patent as representative of the Asserted Claims for the purposes of subject matter eligibility, and AGI did not dispute that assertion. Filing No. 273 at 16. "Claim 1 of the '937 Patent recites the following hardware components: a microprocessor, a bus connector, a global positioning receiver, and a memory storage area." *Id.* at 18. The named inventors and AGI's technical expert, Dr. Edwards, testified that the claims use generic computers and sensors to collect data from standard farm implements. *Id.* at 18–23. Randall Nuss, one of the co-inventors, does not believe the arrangement of the hardware components was an invention. *Id.* at 23. Dr.

5

Edwards testified the hardware components of the claim alone are not a novel combination, and the application program is all software. *Id.* at 23–24.

Nuss testified that the inventors were not creating any new data that was not already on the farm equipment. Filing No. 273 at 25. Instead, the invention figured out how to collect and decode data already on the machine. *Id.* In describing the solution, Gerlock testified:

> And so, you know, I was trying to think through solutioning this. It was like, well, just dispense with all of this manual set up, manual field boundary drawing, manual field naming, manual crop type or chemical or seed, right? Entry of all of that data.
>
> Just dispense with all of that, and then build an interface, a relay device of some sort that can attach to that CAN. And then that device is going to do the work of just collecting the – this raw machine data. Not interpolated data, the raw machine data as it's being served up on the bus via whatever baud rates it sits on the bus.
>
> Collect all of that, store it, and then behind the scenes write software, computer algorithms that can take that agronomic data, engine data, GPS data, which is going to be latitude, longitude, elevation, and time.
>
> You know, sync all that up, and then use that information to determine where production – productive work was being done, and use that information to determine a surface area and area. And that essentially becomes the – you know, part of a big – a broader scope of very detailed information that relates to the productive work that a farmer does on the farm.

Filing No. 273 at 25–26.

According to Gerlock, the information collected can be interpreted on a spreadsheet by hand with a pencil and scratch paper. Filing No. 273 at 27. Gerlock testified, "One way to mitigate the longhand approach to interpreting this data would be to use an implement profile." *Id.*

Dr. Edwards testified the communication protocols existed prior to the Asserted Patents. Filing No. 273 at 33. He stated specifically:

6

> Yes, communication protocols, in general, are something that have been used in software …. The particular use of a communication protocol here and its connection to an implement profile that's within a larger plurality of implement profiles and the way that it is used within the claim is what is novel about the communication protocol.
>
> But again, communication protocols as a general concept is (sic) certainly something that predates the invention here.

*Id.*

When asked whether the Asserted Patents describe any new communication protocol, Dr. Edwards responded he thought there was one example of an implement profile given in the specification that included some operating parameters. *Id.* However, "Aside from that example, [he didn't] know of a definition of a specific protocol that appears in the specification." Filing No. 273 at 33.

AGI did not controvert any of the undisputed statement of material facts provided by Farmers Edge in support of its summary judgment motion. Filing No. 325 at 1. In its response to Farmers Edge's Statement of Material Facts (Filing No. 273, which is extensively cited herein), AGI confirmed that with two minor exceptions, Farmers Edge's Statement of Material Facts are undisputed. Filing No. 325 at 1. Without citing to any evidence or even to the claim elements, AGI only argued the Asserted Claims are patent eligible based on the novel combination of the hardware components. Filing No. 323 at 9.

## STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

7

interrogatory answers, or other materials" show that "an adverse party cannot produce admissible evidence to support" a fact essential to the nonmoving party's claim. Fed. R. Civ. P. 56(c)(1)(A) & (B). The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Celotex Corp., 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting Celotex Corp., 477 U.S. at 324). A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986).

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. Kenney v. Swift Transp., Inc., 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." Id. "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir.

2004). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

## DISCUSSION

35 U.S.C. § 101 provides, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." There is "an important implicit exception [to § 101]: 'Laws of nature, natural phenomena, and abstract ideas are not patentable.'" *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356 (Fed. Cir. 2023) quoting *Alice Corp.Pty. Ltd. v. CLS Bank Int'l,* 573 U.S. 208, 216 (2014) (citations omitted). *Alice* established a two-step test for determining patent eligibility "when a patent claim allegedly involves such patent ineligible subject matter." *Hawk Technology Systems, LLC*, 60 F.4th at 1356. "Under this '*Alice*' test, a claim falls outside § 101 if (1) it is directed to a patent-ineligible concept like an abstract idea, and (2) it lacks elements sufficient to transform the claim into a patent-eligible application." *Id.*

### *Alice* Step One

Under step one of *Alice* the Court must determine whether the claim is directed to an abstract idea, which requires an examination of "'what the patent asserts to be the focus of the claimed advance over the prior art.'" *Id.* (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019) (cleaned up). "In doing so, [the] focus [is] on the language of the asserted claims, considered in light of the specification." *Id.* (citing *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021).

> A "telltale sign of abstraction" is when the claimed functions are "mental processes that 'can be performed in the human mind' or 'using a pencil and

9

> paper.' " *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371–72 (Fed. Cir. 2011)). We have previously found "analyzing information by steps people go through in their minds" and "collecting information, including when limited to particular content" to be abstract. … *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1353-54. ("[M]erely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis."); see also *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) ("[S]electing certain information analyzing it using mathematical techniques, and reporting or displaying the results of the analysis … is all abstract.").

*Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1361–62 (Fed. Cir. 2023).

In *Trinity*, the owner of a patent for a poll-based social networking system sued a competitor for infringement. The district court granted the defendant's motion to dismiss, concluding the asserted patents were ineligible under 35 U.S.C. § 101. The federal circuit affirmed.

In considering the first step under *Alice,* the appellate court found the patent owner's claims were "focused on 'collecting information, analyzing it, and displaying certain results,' which places them in the 'familiar class of claims "directed to" a patent-ineligible concept.'" *Trinity Info Media, LLC*, 72 F.4th at 1362 (citing *Electric Power Group, LLC*, 830 F.3d at 1353.). "A human mind could review people's answers to questions and identify matches based on those answers." *Id.*

The Asserted Claims in this case use generic ("off the shelf") computers and sensors to collect data from standard farm implements. Filing No. 273 at 9, 18–23. The microprocessor, bus connector, GPS receiver, and memory storage area are combined with software to collect and store data from standard equipment used in farming

10

operations. *Id.* It is uncontroverted that the Asserted Claims are directed to software that collects, processes, and shares data. *Id.* at 7–9, 24–26. Filing No. 325 at 1.

As the claims asserted in *Trinity,* the Asserted Claims here are "focused on 'collecting information, analyzing it, and displaying certain results,' which places them in the 'familiar class of claims "directed to" a patent-ineligible concept.'" *Trinity Info Media, LLC*, 72 F.4th at 1362. Indeed, Gerlock testified the information collected can be interpreted on a spreadsheet by hand with a pencil and scratch paper. Filing No. 273 at 27. The language of the Asserted Claims, considered in light of the specifications leads to the conclusion they are abstract and patent-ineligible concepts under step one of *Alice*.

### *Alice* Step Two

At step two of the *Alice* test, the Court considers "the claim elements—individually and as an ordered combination— 'to assess whether [they] transform the nature of the claim into a patent-eligible application of the abstract idea.'" *Hawk Technology Systems, LLC*, 60 F.4th at 1358 (quoting *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017). This requires the Court to determine whether the claims detail something more than "well-understood, routine, conventional activities previously known to the industry." *Alice Corp. Pty.*, 573 U.S. at 225.

In its prior ruling on Farmers Edge's motion to dismiss, this Court gave deference to the U.S. Patent Office's relatively recent issuance of five patents. Filing No. 123. The Court noted, however, that it had a question whether the specifications relating to improved interoperability of various otherwise non-interoperable automated farm tools were sufficient to overcome a motion for summary judgment. *Id.* at 3.

In the case at bar, the individual claim elements are a microprocessor, a bus connector, a global positioning receiver, a memory storage area, and an application process. Filing No. 273 at 18. The hardware components of the claim alone are not a novel combination, and the application program is all software. *Id.* at 23–24. The specification of each Asserted Patent states that they provide a relay device, a farming data exchange system, and computer-implemented methods for tracking, collecting, storing, and sharing farming operation data for farming businesses. *Id.* at 7–9.

The elements of the Asserted Claims considered individually and in an ordered combination do not transform them from an abstract idea into an inventive concept. AGI failed to produce any evidence to controvert Farmers Edge's undisputed statement of facts on the issue of patent ineligibility, and it failed to specify an inventive concept beyond rehashing the claims at a high level. No transformative, inventive concept appears in the Asserted Patents or in the arguments made by AGI. Consequently, the Asserted Patents are ineligible under step two of *Alice* because the recited elements of each claim do not detail anything more than "well-understood, routine, conventional activities previously known to the industry."

THEREFORE, IT IS ORDERED THAT:

1. Farmers Edge's motion for summary judgment, Filing No. 271, on grounds of invalidity under Section 101 as to all Asserted Claims, is granted.

2. AGI's motion for summary judgment, Filing No. 277, is denied.

3. The pending Daubert motions filed by both parties, Filing No. 262 and Filing No. 266, are denied as moot.

4. Neither case has been established as exceptional under Section 285.

5. All other remaining motions are denied as moot.

6. A separate judgment will be entered pursuant to this Memorandum & Order.

Dated this 11th day of April, 2024.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge